United States District Court
District of Connecticut

United States District Court
District of Connecticut
FILED AT HARTFORD
10 29 20 13
Roberta D. Tabora, Clerk
By
Deputy Clerk

DERRICK TAYLOR

Plaintiff                           Case No: 3:12cv1370 (AWT)

v.

Correction Officer Fields, et al

October 29, 2013


Plaintiff's Response to Defendants' Opposition to Default
and Defendants' Motion for Extension of Time


Under ordinary circumstances in which a party fails
to respond within the time allotted by the Courts'
scheduling order the party who failed to abide by the
Courts' order would apologize, default would be set
aside (without objection) and the case would simply
move on.


That is my preference, I would imagine it to be the
Courts' preference (without being presumptuous) and, until
now it was pretty much just a pro forma way of moving
the case along.


But now, Mr. Strom, for the Defendants, has chosen to
use his failure to respond in a timely manner as an

opportunity to attack me personally (suggesting on page 2 of Defendants' Opposition to default that I somehow sought to waste the Court's time and resources by filing "unnecessary motions") while simultaneously trying to spin the Court on the merits of the claim.

For this reason I offer a brief response to Mr. Sturm's incredible legal strategy.

<u>Facts:</u>

On August 01, 2013 the Court ordered the defendants to file a response to the Complaint within 70 days. The defendants have failed to respond, period.

Mr. Sturm acknowledges that Defendants Pluszynski and Serwa "were, in fact served", therefore Mr. Sturm should have filed an answer. But he didn't; instead he seeks to make me the villain because I actually had the audacity to follow the Rules of the Court.

Argument:

As I've stated above, if Mr. Strom had simply filed a Motion to set Aside Default I would not have objected.

Instead, true to form Mr. Strom could not resist getting in a few punches while my back was turned.

For example:

Mr. Strom claims to have just learned of the facts involved in this claim "recently" (pg. 1, line 7 - Mot. for ext. of time) and due to his being so busy he simply hasn't had the time to "fully investigate the facts and circumstances related to plaintiff's allegations".

Interesting. Attachment A hereto is a set of documents totalling seven (7) pages. This grievance package, which rather thoroughly details the incidents outlined in the above captioned complaint, make clear that Mr. Strom has been intimately involved in this complaint for over two (2) years up to now.

As a matter of fact, due to Mr. Strom's involvement in the investigation of this Grievance/Administrative Remedy it is almost a certainty that he will be called as a witness, afterall Mr. Strom himself just admitted in his Motion for extension

of time that no attorney-client privilege could be asserted for the investigation he conducted prior to service.

It seems unlikely that the Court would allow Mr. Strom to avoid testifying to incidents which occurred some two (2) years prior to Mr. Strom ~~being~~ being assigned this case. An attorney can not simply create a retro active attorney-client relationship where previously (in the words of his own motion) one did not exist.

And in case there was any question as to whether or not a civil rights claim based upon the incidents at Corrigan, as described in the above captioned complaint, was known to Mr. Strom to be ultimately impending, I would refer the Court to Attachment B hereto. Attachment B is a general release from a seperate claim that was settled. It's all pretty boilerplate, except for the "carve out". We specifically carved out an exception allowing me to file the above captioned complaint. The handwritten initials "SRS" are Steven R. Strom's. This was over a year ago.

And, finally - Attachment C hereto is a copy of a letter from AAG Strom to me where, after berating me for being friendly, Mr. Strom acknowledges receiving a courtesy

copy of the above captioned lawsuit; this was a
year ago.

Mr. Strom then goes on to claim that, essentially my
claim has no merit and will surely be dismissed by dispositive
motion. I'm not sure what legal doctrine(s) Mr. Strom is
relying upon to base his dismissiveness, but it seems out of place.

Here is the reality of the claim. I allege that at least
three (3) bigots, cloaked in state authority, used their
positions of power to threaten, intimidate and harass me
based on their anger and ignorance toward my religious
practices.

In addition to the threats, intimidation and harassment, the
racist behaviors described in the complaint culminated in the
willful and purposeful destruction of my Torah and other personal
property.

I have included with the complaint the handwritten statements
of three (3) eyewitnesses to the events described therein, as well
as my own statement.

I think we can all agree, that is what you call a prima

facie claim.

With all due respect to the parties, and especially to the Court, a couple of hundred years of precedence says a prima facie claim is not threatened by a dispositive motion.

Mr. Strom picks out a recent 2d Circuit decision regarding RCWRA's applicability to individual capacity claims. I will leave Mr. Strom to his argument — but what about the other six (6) causes of action? Does Mr. Strom really believe that any competent jurist would say that targeting Jews (or any class) for the type of abuse described in this complaint is somehow "part of the job" and grant them immunity? In what world? (Just so I'll know to avoid it).

And Mr. Strom has the gall to raise the "manifest injustice" to the pro defendants who, according to Mr. Strom, are in no way at fault for failing to follow the clear and unambiguous instructions contained in a five (5) page order, this wasn't the Citizens' United ruling, it was a five page scheduling order, not very complicated.

So, if not responding to the complaint in the time frame scheduled by the Court is not the fault of the defendants, whose fault is it?

And one final point - not of any real import - just something I find irksome.

Mr. Strom refers on more than one occasion to having been "patiently" waiting for me to effectuate service, while at the same time (once in the same sentence) claiming that his failure to timely respond was inadvertant. Really?

How can one, being of any seriousness, claim to be patiently marking the passage of time while claiming not to notice the passage of time?

In conclusion

With all due respect, this is ridiculous. Mr. Strom claims not to want to burden the Court's "scarce resources" but rather than simply having default set aside he turns a simple procedure into a task.

He claims that removing a RLUIPA claim from a claim which is raising First, Fourteenth and Eighth amendment claims, Equal protection claims as well as State statutory claims will somehow cause a prima facie claim to be dismissed.

He claims to have first become aware of this complaint two (2) months ago while documentation clearly shows he has been deeply involved with this claim for over two (2) years.

Pg. 7

I do not claim to know what is or is not in the mind of Mr. Strom but I honestly fail to see how this absolute waste of everyones' time benefits his clients in any way.

I do not object to the setting aside of default, I do strongly object to Mr. Strom being granted this open ended extension of time which he only requested after time to answer had already expired and which he chose to convolute with mistruths and false premises.

Respectfully Submitted

Derrick J. Taylor - 10/29/13
DERRICK J. TAYLOR #179983
NORTHERN CORRECTIONAL INSTITUTION
287 Bilton Rd. - P.O. Box 665
SOMERS, CONNECTICUT 06071

Certification of Service

I hereby certify that a copy of the foregoing was mailed this 29th day of October, 2013, first Class postage pre-paid to all parties of record.

Derrick J. Taylor   10/29/30
DERRICK J. TAYLOR - PLAINTIFF

Copy To
Steven R. Strom
Assistant Atty. Gen.
110 Sherman St.
Hartford, CT, 06105

| SECTION 5 | DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW | |
|---|---|---|
| Date Received:   10/11/11 | IGP #:   140-12-014 | T#:  T-137-6879 |
| Disposition:   DENIED | | Date of Disposition:   12/30/11 |

Reason:   Your claim has been investigated and has been denied.  The alleged "allegations" contained in your grievance, and from the statements made from staff, did not collaborate and were unfounded.  Additionally, the inquiry of the staff in question had not violated any of the directives within, *A.D. 2.17   Employee Conduct*.

On January 2, 2007, you were classified as a High Security Inmate and Per. *A.D. 9.4 Restrictive Status* / Sec.14 Placement *on High Security Status* (attached).   Such placement would require the Unit Administrator and staff to follow all policies and procedures when housing any High Security Inmates; this ensures the safety and security of the facility and of the public.  This would include monitoring movement, cell searches, at minimum of two (2) times a week, these searches would be done randomly, and without notification.

*Per: A.D. 10.1 Inmate Assignment and Pay Plan* Sec C.  *All assignments shall be made through the classification process. Selection shall take into account the following: not discriminate against an inmate for reasons of age, race, religion, national origin, gender, or sexual orientation.*

The Classification Counselors at this facility did acknowledged your religious request regarding, a job that would allow a schedule modification, in observance of the Sabbath.  The Classification Staff had then offered you with a Tier Worker position which you accepted on May 27, 2011.  The Unit Manager and Unit Staff acknowledged and accommodated the modified work schedule. On June 24, 2011 you had accepted a different job assignment as a Food Server and completed the required training and were informed of your new job responsibilities.  The Food Server position would not be a suitable job assignment for anyone requesting a schedule modification.   With the new job you accepted, it also had different responsibilities and schedules in which you agreed to.  During this time Lieutenant Pluszynski   continued to assist you and authorized the necessary schedule modifications.

| ☐ You have exhausted DOC's Administrative Remedies. | X This matter may be appealed to:  The D.A. |
|---|---|
| Signature: | Date: 12/30/11 |

# ATTACHMENT A



# Inmate Administrative Remedy Procedure –
## Notice of Time Extension
### Connecticut Department of Correction

CN 9605
REV 1/31/09

| Inmate name: | Taylor, D | Inmate number: | 179983 |

| Facility/Unit: | 140/ Level 1 receipt #137-6879 | Housing unit: | H-52 | Date: | 12/12/11 |

Your grievance/appeal is currently pending at:  *Corrigan C.I.*

It appears that the time needed to investigate and respond to you will exceed the timeframe established by Administrative Directive 9.6, Inmate Administrative Remedies. I am, therefore, notifying you that the time frames have been extended at this level so that the issue can receive full consideration.

Additional comments: Per conversation with AAG Strom and Warden Murphy extended through January 3, 2012.

Administrative Remedies Coordinator:    *[signature]*    Date:  12/12/11



# Inmate Grievance Appeal Form - Levels 2/3
## Connecticut Department of Correction

CN 9604
REV 1/31/09

| Inmate name: TAYLOR, D.J. | | Inmate number: 179983 |
|---|---|---|
| Facility/Unit: NORTHERN, C.I. | Housing unit: 3W204 | Date: 1/09/12 |
| IGP number: 140-12-014 | T number: T-137-6879 | |

Use this form to appeal a Level 1 decision. CN 9602, Inmate Administrative Remedy Form and any attachments must accompany this form; no review will be undertaken if they do not accompany this form. Your appeal must be filed within 5 days of the Level 1 response; deposit it in the "Administrative Remedies" box.

### Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: The "response" by the level reviewer is so demonstrably false that intentional deception is the only plausible explanation. As all parties are well aware I've filed more than (Please see attached Continuation)

Inmate signature: Taylor, D.J.                    Date: January 09, 2012

### FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

| Date received: 1/20/12 | Disposition: Denied | Date of disposition: 1/26/12 |
|---|---|---|

Reasons:    You are appealing a level one grievance concerning staff conduct in regards to harassment and your cell shakedown while hosed at Corrigan CI.  I have been advised that the facility has conducted a thorough investigation regarding your allegations.  There was no useful purpose to contact you as part of their investigation as your statement/grievance was sufficiently detailed.  Also, the witnesses you provided were interviewed and none of the allegations in your grievance could be collaborated.  Therefore, your allegations were found to be unfounded.  Your level 2 grievance is denied.

Level 2 reviewer: _____

☐ This grievance may be appealed within 5 days to Level 3.

☑ You have exhausted the Department's Administrative Remedies. Appeal to Level 3 will not be answered.

### Appeal of Level 2 Decision to Level 3

I am appealing the Level 2 decision because:



| Inmate signature: | Date: |
|---|---|

### Deposit your appeal in the "Administrative Remedies" box.

### FOR OFFICIAL USE ONLY - LEVEL 3 REVIEW

| Date received: | Disposition: | Date of disposition: |
|---|---|---|

Reasons:




Level 3 reviewer:

a couple of grievances in my time, but I can honestly say
I've never had a "response" so filled with so many probably
inaccurate assertions.

This response was an overt whitewashing, plain and simple.

This idea that there was, as asserted by Warden Erfe, an actual
investigation of the claims stated herein, is laughable. Nobody ever
even spoke to me about the claims. How do you "investigate" a
grievance without interviewing the grievant?

If an actual investigation had been done maybe the defendants
could have avoided making assertions so clearly untrue. Don't get
me wrong – as a prisoner I recognize that I come before the Court or
jury with an inherent credibility deficit, so being able to
identify this many lies at one time is a welcome development in this
case; it will hopefully help to show the veracity of this claims.

For example – of the three (3) High Security prisoners in my unit at the
time of these incidents C/o Fields + C/o Senis only shook down my cell, not
just on the day in question, but ever; I never had a Tier Worker
job @ Corrigan (Ever) I was always a food server and the prisoner who
was moved out of the food server job so that I could work will testify
to the same; there is no "training" for the food server job; I did not
go to Classification on May 27, 2011 (or any other time @ Corrigan); etc, etc, etc ...

So, beyond the lack of substantive responses to my claims the defendants
have locked themselves into statements which will be absolutely
exposed as lies – not smart.

## Inmate Request Form
### Connecticut Department of Correction

CN 9601
REV 1/31/09

| | |
|---|---|
| Inmate name: Taylor, D.J. | Inmate number: 179983 |

| | | | |
|---|---|---|---|
| Facility/Unit: Northern Corr. Inst. | Housing unit: 3W204 | Date: 1/09/12 |

Submitted to: Administrative Remedies Coordinator Miller

Request: Miss Miller - ① Enclosed is my appeal of grievance # 140-12-014;
As you can see, AAG Steve Strom is involved and a copy of the enclosed needs
to be faxed to his office.

If you could please send me verification that a copy hereof was faxed
to Asst Atty. Gen. Strom I'd ②really appreciate it. ②

Please do not forward to D.A. Lajoie without copying & faxing to AAG Strom.

Thank You

**continue on back if necessary**

Previous action taken:

**continue on back if necessary**

| Acted on by (print name): | Title: |
|---|---|

Action taken and/or response:

After consulting with Lajoies office your
original will be sent directly to them rather than
to Cimigas. They will handle Communications
with Stroms office. Save this request as

**continue on back if necessary**

| Staff signature: Proof of receipt and for WAC | Date: |
|---|---|

Miller  1/9/12



# Inmate Administrative Remedy Form
## Connecticut Department of Correction

CN 9602
REV 1/31/09

| Facility/Unit: *MacDougall Correctional Institution* | Date: *Sept. 30, 2011* |
|---|---|
| Inmate name: *D.J. TAYLOR* | Inmate number: *179983* |

| SECTION 1 | SELECT ADMINISTRATIVE REMEDY <u>A</u>, <u>B</u> or <u>C</u> BELOW. |
|---|---|

Follow the instructions *(for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

**A.** ☒ **I am filing a Grievance.**

Prior to filing a grievance, you must attempt informal resolution. Attach a copy of CN 9601, Inmate Request Form with the staff member's response <u>OR</u> state in Section 4 the reason why the form is not attached. Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.  >  Refer to Section 2 below

**B.** ☐ **I am requesting a Health Services Review:**  ☐ Diagnosis/Treatment  > 
  ☐ All Other Health Care Issues  >  Complete Section 4  >>>>

**C.** ☐ **I am filing an Appeal of a (select one below):**
Appeals must be filed within 15 days of notification of a decision.

  ☐ Disciplinary Action  >  Complete Section 3 below

  ☐ Special Management Decision  ☐ Classification Decision  > 
  ☐ Media Review Committee Decision  ☐ Furlough Decision  > 
  ☐ Security Risk Group Designation  ☐ ADA Decision  >  Complete Section 4  >>>>
  ☐ Determination of Grievance Process Abuse  ☐ Rejection of Outside Tapes/CDs  > 

| SECTION 2 | OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE |
|---|---|

Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side. >>>

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

| SECTION 3 | DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal <u>ONLY</u> |
|---|---|

You may file a Disciplinary Appeal <u>ONLY</u> if you have pleaded not guilty and have been found guilty at a disciplinary hearing. If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

| Offense: | Report date: |
|---|---|
| Facility where hearing was conducted: | Date of hearing: |

Did you have an advocate?  ☐ yes  ☐ no  If yes, name of advocate:

Did you identify witness(es) to the investigator?  ☐ yes  ☐ no  Did your witness(es) testify?  ☐ yes  ☐ no

Name(s) of any witness(es):

T-137-6879

# CONFIDENTIAL

**(FOR OFFICIAL USE ONLY)**

Inmate name: TAYLOR, D.J.

Inmate number: 179983          Housing: N-63

| SECTION 4 | STATE THE PROBLEM AND REQUESTED RESOLUTION |
| --- | --- |

Provide any factual information that is applicable, including any responses from staff. State the action that you think should be taken to resolve the problem. PLEASE PRINT.

Informal Resolution: Attached hereto please find a letter dated Sept. 30, 2011 to Warrick Taylor from Atty. Richard Cahill @ Inmates' Legal Assistance Program. As evidenced in page 2 par. 1 of said letter, requests were sent to CMC Dir. Kim Weir and Corrigan Unit Administrator Scott Esposito. I have waited the requisite 15 business days (and allotted 3 additional days for mailing) but to date have received no response. Additionally, attached hereto please find a DRAFT affidavit which was mailed to Atty. Cahill @ ILAP (Refer to page 1 par. 2 of Sept. 30, 2011 letter - attached). At the bottom of page 4 is a synopsis of the 5 requests I write regarding the incident(s) described below. To date, no response(s) have been received.

Statement of Claim: The attached affidavit draft details a series of anti-semitic actions taken by staff at the Corrigan Correctional Center ("Corrigan") which culminated in my transfer to MacDougall Correctional Institution ("MacDougall"). Included in this claim is the allegation of deliberate, malicious destruction of my personal property by Corrigan staff motivated by religious bigotry and sadism. My subsequent transfer to MacDougall (see attached)

Inmate signature: Taylor W. #179983          Date: September 30, 2011

**For all remedies except health services, deposit this form in the Administrative Remedies box.**
**For a health services issue, deposit this form in the Health Services box.**

| SECTION 5 | DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW |
| --- | --- |

Date Received: 10/11/2011          IGP #: 140-12-014          T#: T-137-6879

Disposition:                          Date of Disposition:

Reason:

☐ You have exhausted DOC's Administrative Remedies.          ☐ This matter may be appealed to:

Signature:                          Date:

Continuation to Level I Grievance filed September 30, 2011

which has resulted in loss of job, pay, good time and property
in addition to the fact that MacDougall staff refuse to provide me with
the Kosher diet agreed upon between the parties in TAYLOR V. CHOINSKI, ET AL,
indicate to me that this pattern of retaliatory action is ongoing.
But this grievance is solely in regards to the incident(s) described in the
attached letter from Atty Cahill and Affidavit draft, which occurred @ Corrigan.
My cell was shaken down, my property was destroyed and I was subjected to religious
hatred all because a racist guard objected to my not being allowed to work on
the Sabbath. The subsequent issues, likely involving defendants @ MacDougall,
are NOT being waived simply because those issues have not been incorporated into
this grievance. The current and ongoing violations will be addressed in a seperate action.

**Action Requested**

A: Preservation of Unit video – F Block, Corrigan from 8PM Friday, Sept 09, 2011 to
4PM Sunday, Sept. 11, 2011, and written confirmation thereof.

B: Written acknowledgement from Dir. Kim Weir that an investigation has been
initiated regarding the events described herein.

C. The full names of Corrigan Lieutenant Pluszynski and Corrigan CO's Fields and Knox.


I realize that my transfer to MacDougall makes this administrative remedy
process difficult for the MacDougall grievance coordinator. I would simply ask
that the process be expedited at this administrative level to allow for
litigation in a forum more suited for the type of fact finding that will
be required to truly get to the bottom of this situation.

Thank You For Your Time,

Derick Taylor – 9-30-11

# ATTACHMENT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DERRICK TAYLOR,      : CIVIL NO: 3:08Cv807(HBF)(JGM)
  *Plaintiff,*       :
             :
  v.           :
             :
WAYNE CHOINSKI, ET. AL.,   :
  *Defendant.*      : JULY 10, 2012

## GENERAL RELEASE

**KNOW ALL BY THESE PRESENTS** that **Derrick James Taylor**, for and in consideration of the mutual promises, agreements and other good and valuable consideration as set forth on the record in open court on April 21, 2011, before the Honorable Joan Glazer Margolis, United States Magistrate Judge, and as set forth herein below, does herewith release and forever discharge Wayne Choinski, Rev. Anthony J. Bruno, Dr. Carson Wright, Jeffrey McGill, Lt. Barnette, Theresa Lantz and all present or former officers and employees of the State of Connecticut Department Of Correction, and any other employee, contractor, agent and/or representative of the State of Connecticut and their heirs, successors and assigns, from all actions, causes of actions, suits, claims, controversies, damages and demands of every nature and kind, including attorneys' fees and costs, which the plaintiff, Derrick James Taylor, had or now has which were raised or which could have been raised in the above captioned matter. This General Release includes, but is not limited to, all causes of action alleging violations of federal and state constitutional rights, common law rights, statutory rights, negligence, and/or such other causes of action as may be available under law or equity, from the beginning of time to the present, but does not include the specific claims or potential claims raised in the action, <u>Taylor v. Murphy</u>, 3:10 CV 245(HBF), which was specified on the record in open court on April 21, 2011.

1

To the extent that claims related to Jewish religious practices are raised or could have been raised in this case and in <u>Taylor v. Murphy</u>, as set forth on the record, and in the transcript, they are released. A copy of the transcript will be appended to this release when available and will be incorporated by reference herein. This General Release shall not bar the bringing of claims based on the plaintiff's allegations of conditions of confinement at Corrigan-Radgowski CI from March 15, 2011, to September 15, 2011. This General Release shall bar any claims relating to plaintiff's confinement at MacDougall CI, from September 15, 2011 to December 19, 2011. In addition, plaintiff's signing of this General Release bars any ~~and all~~ other DV Jan claims about conditions at Northern CI, all actions, causes of actions, suits, claims, controversies, damages and demands of every nature and kind, including attorneys' fees and costs, which the plaintiff, Derrick James Taylor, had or now has which were raised or which could have from the beginning of time to the present, AAS 8/13/12 (DV) ~~except for claims relating to the incident involving the plaintiff at Northern CI on February 6, 2012.~~

In consideration of this General Release, the Commissioner of Correction, Leo C. Arnone has authorized the plaintiff, Derrick James Taylor, to have an individual menu as agreed to between the parties, which may be amended from time to time by mutual agreement. Plaintiff shall be transferred to Special Needs at a facility designated by the Commissioner to house Special Needs inmates, subject to a Special Needs Management Plan. Further, the plaintiff shall be paid by the State the sum of three hundred fifty dollars, ($350.00) payable to Derrick J. Taylor, as full, final and complete satisfaction of any and all claims for money damages, attorneys' fees and costs which may have been claim based on the allegations that were raised or could have been raised based on the allegations of the Complaint in this case. This sum shall be

2

free and clear of any and all State liens for costs of incarceration, which will not be asserted

against the settlement proceeds, although the lien(s) of the State shall continue to exist.

It is expressly understood and agreed that the mutual promises, agreements and the

consideration discussed above are not an admission of liability on the part of the defendants,

their heirs, successors or assigns, the State of Connecticut, the Connecticut Department of

Correction, or any present or former officer, employee, agent, contractor or representative of the

State of Connecticut, but rather constitute the compromise settlement of claims that were raised

or could have been raised in the above-captioned matter, raised in any matter currently pending,

or that may be raised in an action not yet pending but based upon the allegations of the

complaint.


I hereby acknowledge this General Release to be made upon adequate advice of counsel

and is my free act and deed, made knowingly, intelligently and voluntarily.

_____
Derrick Taylor


Subscribed to and sworn to before me this _____ day of July, 2012.

_____  7/10/1.
Notary Public / Commissioner of the Superior Court


**JACQUELINE BACHAN**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 8/31/2016

3

# ATTACHMENT C

GEORGE C. JEPSEN
ATTORNEY GENERAL



MacKenzie Hall
110 Sherman Street
Hartford, CT  06105-2294

Office of The Attorney General
**State of Connecticut**

Tel.: (860) 808-5450
Fax: (860) 808-5591

October 3, 2012

Mr. Taylor, #179983
Northern Correctional Institution
287 Bilton Road, P.O. Box 665
Somers, Ct 06071

Re:  Your correspondence dated September 14, 2012, received September 21, 2012

Dear Mr. Taylor:

Your correspondence dated September 14, 2012, was stamped into our office on September 21, 2012, but not given to me until September 24, 2012.  Please do not address me as "Steve."  I am not your friend, nor your colleague.  I consider such familiarity to be disrespectful and completely inappropriate  I try to always address you as Mr. Taylor, and wish that you address me with the same formality.  With regard to your letter, I do not understand it, nor do I understand what you are complaining about.  There was never any guarantee that you would be housed in any particular facility.  Your major disappointment appears to be that you have been assigned to housing at Northern CI.  This is not a violation of any agreement, as your housing assignment at all times remains in the discretion of the DOC.  With regard to your commissary account, Warden Murphy only agreed to waive one advance payment, not two, and I am advised that this issue has now been resolved.  With regard to SGT as of 10/1/12, you received 12 days SGT in accordance with the Commissioner's exception to the directive giving you SGT.  You also had SGT posted for a partial period in September.  With regard to work, you are eligible for a work assignment to the same extent any other inmate in GP might be.  That means you have to wait until you are assigned a job.  There are far more inmates than jobs and many inmates in GP are on waiting lists for jobs.  Hopefully by the time this letter reaches you, the issue of you having a job will be resolved.  Lastly, I find it odd, and more than unusual, that you would be so self-contradicting, appearing to be pleasant, and wishing me holiday good wishes for the "High Holidays," and then including a courtesy copy of a new lawsuit you intend to file.  I do not know who will be assigned the case, and will not comment on it, as it may not be assigned to me.

Very truly yours,

Steven R. Strom
Assistant Attorney General

SRS:bmw



### STATE OF CONNECTICUT
#### Department of Correction
#### Operations Division
##### 24 Wolcott Hill Road
##### Wethersfield, CT 06109

Mark Strange
Deputy Commissioner

To:        Brian K. Murphy, Commissioner

From:     Mark Strange, Deputy Commissioner

Date:     April 30, 2010

Subject:  NORTHERN C.I. DEATH ROW REVIEW

<u>History</u>

- Death Row transferred to Northern C.I. in 1995 from Osborn C.I.
- Death Row housed in 1 East upon transfer to NCI and currently remains in 1 East.
- 1995 – Death Row inmates were allowed indoor/outdoor group recreation.
- 1995 – current; Death Row inmates eat meals in their cells.
- 1995 – Death Row inmates on 1 staff to 1 inmate escort with no restraints for movement within housing unit. All out of unit movement in restraints.
- November 1998 - Warden Gomez modified policy for group recreation from one group to two groups, to reduce conveyance of contraband.
- 1998 – Six total Death Row inmates housed on two tiers; three on each tier.
- April 1999 – Webb's Federal Civil Rights Lawsuit – "Conditions of Confinement" trial takes place.
- May 1999 – Recreation modified by Warden Myers. All Death Row inmates recreate individually, two hours per day. One hour on day shift which alternates daily between outside and dayroom; one hour at night in dayroom.
- 2000 – Recreation modified to one hour dayshift outside recreation and one hour inside second shift recreation.
- February 2002 – Recreation cages are installed. Death Row inmates recreate one hour outside on day shift, three at a time, one inmate per cage. One hour individually on second shift in dayroom.
- Death Row inmates have never recreated in the Northern gymnasium.
- September 2003 – Four of the seven inmates housed on Death Row initiated a hunger strike due to their conditions of confinement. DA Choinski and Warden McGill met with the inmates to address their concerns which included recreation and meals as a group, commissary items, increase the number of approved visitors, Increase the number of calls per day and a plastic chair in cell.

## CONNECTICUT DEPARTMENT OF CORRECTION
### NORTHERN CORRECTIONAL INSTITUTION

~~~~~~~~~~~~~~~~

## *RESPONSE TO INMATE REQUEST*

**TO :**     **Inmate Derrick Taylor 179983**      **1 West #213**
**DATE:**     **September 26, 2013**

*At this time your request is denied; you currently have seating and a desk in your cell.*
*The one time a chair was allowed in a death row cell in the past was via a doctor's order for a*
*medical condition.*

Warden Edward Maldonado

c:      File

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

| Inmate name: Shyla D. I | Inmate number: 179933 |
|---|---|

| Facility/Unit: NCI | Housing unit: 1W-213 | Date: 9/24/13 |
|---|---|---|

Submitted to: NCI Warden Edward Maldonado

Request: Warden Maldonado

I realize that chairs were "temporarily" removed from Sp. Needs and Death Row in 2010, but I need to know when/if any exception to A.D 9.4 was ever granted regarding cell furnishings.

As you know, A.D. 9.4 grants us the same cell furnishings (I.E chairs) as gen. pop. so why do we still not have our chairs back?

Thank You

*continue on back if necessary*

Previous action taken:

RECEIVED

SEP 26 2013

N.C.I. WARDEN'S OFFICE

*continue on back if necessary*

| Acted on by (print name): | Title: |
|---|---|

Action taken and/or response:

*continue on back if necessary*

| Staff signature: | Date: |
|---|---|

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Taylor, D.J.

Inmate number: 179983

Facility/Unit: NCI

Housing unit: 1 W-215

Date: 10.28.13

Submitted to: Counselor Peterson

Request: Peterson -

I need (1) one copy of this motion please

I also need to e-file it - can you handle that or is it only Blois, et al who do the e-filing? Either way, I need to e-file this.

Thanks

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name):

Title:

Action taken and/or response:

SCANNED at
and Emailed
10/28/15 by ___  29 pages
/date        initials   No.

continue on back if necessary

Staff signature:

Date:

141·14·027   **Administrative Remedy Receipt**   /w 215   CN 9603
**Connecticut Department of Correction**   REV 1/1/08

| Facility number: | 141 | Receipt number: | 6144 |
|---|---|---|---|

| Inmate name: | TAYLOR, DERRICK | Inmate number: | 179983 |
|---|---|---|---|

The Admin Remedies Coordinator has received your:   ☒ Grievance   ☐ Appeal   ☐ Property Investigation
and the appropriate procedure will commence in accordance with AD 9.6, Inmate Administrative Remedies.

| Administrative Remedies Coordinator: | cc FLORES | Date: | 9·23·13 |
|---|---|---|---|

Distribution: original (white) to inmate, copy (yellow) to file